IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ANGELITA BAILEY,
individually and on behalf
of all others similarly
situated,

    v.  :  Civil Action No. DKC 23-827

MERCURY FINANCIAL, LLC

**MEMORANDUM OPINION**

Presently pending and ready for resolution are: (1) a motion to compel arbitration and stay proceedings and to strike class allegations filed by Defendant Mercury Financial, LLC ("Mercury"), (ECF No. 7); and (2) a motion for leave to file a surreply filed by Plaintiff Angelita Bailey, (ECF No. 16). The issues have been briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the motion to compel arbitration and stay proceedings and to strike class allegations will be denied, and the motion for leave to file a surreply will be granted in part and denied in part.

**I. Background**[1]

Defendant, a subprime credit card loan originator, marketer, and servicer, extended consumer credit of less than $25,000 to

---

[1] The facts are construed in the light most favorable to Plaintiff as the non-movant. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986).

Maryland residents, including Plaintiff.  (ECF No. 3 ¶¶ 2, 17).  Plaintiff accepted a cardholder agreement (the "Cardholder Agreement") in Maryland for a "Mercury" branded credit card account, after which Defendant repeatedly made and collected on its credit card loans to Plaintiff.  (*Id.* ¶¶ 28, 33-41).

The Cardholder Agreement[2] governs the cardholder ("you," "your," or "yours"), First Bank & Trust ("we," "us," and "our"), in addition to related parties such as agents.  (ECF No. 7-5 at 3, 7).  The Cardholder Agreement's choice-of-law provision prescribes application of federal and South Dakota law.  (*Id.* at 6).  The arbitration provision provides, in part:

> By accepting this Agreement, you agree to this Jury Trial Waiver and Arbitration Clause ("Clause").  This Clause is in question and answer form to make it easier to understand.  Even so, this Clause is part of this Agreement and is legally binding.  Under this Clause, you waive the right to have any Dispute heard by a judge and jury and you waive the right to participate in a class, representative or private attorney general action regarding any Dispute.

---

[2] Defendant provided multiple versions of Plaintiff's cardholder agreement: (1) a 2006 agreement for a credit card account issued by Barclays Bank Delaware, (ECF No. 7-3); (2) a 2018 agreement after First Bank & Trust, Brookings, SD ("First Bank & Trust"), acquired Plaintiff's account, (ECF No. 7-6); and (3) a 2020 version of the agreement issued by First Bank & Trust containing an identical arbitration provision as the 2018 agreement, (ECF No. 7-5).  The court cites to the 2020 agreement because Defendant also cites to the same agreement when invoking the arbitration provision.  (ECF No. 7-1 at 9-10).

(*Id.* at 6).³  According to the arbitration provision's delegation clause, "'Disputes' means any claim, counterclaim, cross-claim, complaint, cross-complaint, controversy, or dispute between you or us arising under, out of, or directly or indirectly related to your application, this Agreement or your relationship with us." (ECF No. 7-5 at 7).  The arbitration provision is subject to a change-in-terms provision, which states:

> The rates, fees and terms of this Agreement (including its Jury Trial Waiver and Arbitration Clause), may change and we may add or delete any term. When required by law, we will provide advance written notice of any changes and any right to reject the changes.

(*Id.* at 3).  The Cardholder Agreement permits First Bank & Trust to assign its rights and obligations.  (*Id.* at 6).

On January 25, 2023, Plaintiff filed a complaint, on behalf of herself and others similarly situated, in the Circuit Court for Montgomery County.  (ECF No. 3).  Plaintiff alleges that Defendant made loans without a license in violation of the Maryland Consumer Loan Law Md. Code Ann., Com. Law. §§ 12-301 *et seq.* ("MCLL") – which requires consumer lenders making loans of less than $25,000 to Maryland residents to be licensed – thus rendering its loans void and unenforceable.  (*Id.* ¶¶ 4-8).  Plaintiff contends that Defendant's collection on its void and unenforceable loans also

---

³ The arbitration provision also allows for advance opt-out, but Plaintiff does not challenge Defendant's assertion that she did not opt out of the arbitration provision.  (ECF No. 7-1 at 9).

violates the Maryland Consumer Debt Collection Act, Md. Code Ann., Com. Law §§ 14-201 *et seq.*, the Maryland Consumer Protection Act, Md. Code Ann., Corn. Law §§ 12-101 *et seq.*, and gives rise to claims for negligence, unjust enrichment, and money had and received. (*Id.* ¶¶ 10-11). Defendant timely removed this matter to this court, (ECF No. 1), and on March 31, 2023, moved to compel arbitration, stay proceedings, and strike class allegations pursuant to the arbitration provision within the cardholder agreement, (ECF No. 7). On May 15, 2023, Plaintiff responded in opposition, (ECF No. 11), and on June 30, 2023, Defendant replied, (ECF No. 15). On July 24, 2023, Plaintiff moved for leave to file a surreply. (ECF No. 16). On August 17, 2023, Defendant responded in opposition, (ECF No. 17), and on August 21, 2023, Plaintiff replied, (ECF No. 18).

**II.   Motion for Leave to File Surreply**

Under Local Rule 105.2(a), "[u]nless otherwise ordered by the Court, surreply memoranda are not permitted to be filed." Although a district court has discretion to allow a surreply, surreplies are generally disfavored. *Chubb & Son v. C.C. Complete Servs., LLC*, 919 F.Supp.2d 666, 679 (D.Md. 2013). A surreply may be permitted "when the moving party would be unable to contest matters presented to the court for the first time in the opposing party's reply." *Khoury v. Meserve*, 268 F.Supp.2d 600, 605 (D.Md. 2003) (citation omitted). By contrast, the court may deny a motion for

leave to file a surreply when the matter addressed in the reply is not new, *see F.D.I.C. v. Cashion*, 720 F.3d 169, 176 (4th Cir. 2013), or if the court does not rely on the new material raised in the reply to reach its decision, *see, e.g.*, *E.E.O.C. v. LA Weight Loss*, 509 F.Supp.2d 527, 540 (D.Md.2007) (denying the parties' motions to file surreplies because the court did not rely upon the new case law and evidence in making its decision); *First Penn-Pacific Life Ins. Co. v. Evans*, 162 F.Supp.2d 423, 430 (D.Md.2001) (denying plaintiff leave to file a surreply "[s]ince the Court will not be considering the additional contentions advanced.").

Plaintiff argues that she is justified in filing a surreply because Defendant made five new arguments in its reply: (1) Defendant is the agent of First Bank & Trust; (2) First Bank & Trust sold Plaintiff's account directly to Velocity Investments, LLC ("Velocity"); (3) federal law requires Defendant to provide Plaintiff advance notice of changes to the arbitration and delegation clauses; (4) the language of the Cardholder Agreement prohibits retroactive changes to the arbitration and delegation clauses; (5) the court should save the arbitration and delegation clauses in the Plaintiff's illegal loan agreement from being illusory by applying the equitable "implied covenant of good faith and fair dealing." (ECF No. 16 at 2). Plaintiff's fourth argument fails because this legal issue was raised by Plaintiff herself in her opposition brief and is not new in Defendant's reply. (ECF

5

No. 11 at 28-29). While the first, second, and fifth arguments are new, a surreply to those arguments is unnecessary because the court does not rely on them to make its decision.

Plaintiff's third reason is sufficient. Defendant's argument that federal law requires Defendant to provide Plaintiff advance notice of unilateral modifications to the Cardholder Agreement's arbitration provision exceeds a direct response to Plaintiff's contention in its opposition that Maryland law does not require notice of such modifications, (ECF No. 11 at 16, 21, 27), because Defendant references federal regulations that have not been previously discussed, (ECF No. 15 at 11-12). Because Plaintiff was unable to respond to this argument, Plaintiff's motion to file a surreply is granted with respect to this argument.

### III. Motion to Compel Arbitration and Stay Proceedings and to Strike Class Allegations

#### A. Standard of Review

Where, as here, the motion to compel arbitration implicates whether such an agreement was ever formed, the court treats the motion as one for summary judgment. *See Cherdak v. ACT, Inc.*, 437 F.Supp.3d 442, 454 (D.Md. 2020) (quoting *Caire v. Conifer Value Based Care, LLC*, 982 F.Supp.2d 582, 589 (D.Md. 2013)) (treating a motion to compel arbitration as a motion for summary judgment where "the formation or validity of the arbitration agreement is in dispute"). The court may consider documents outside the pleadings

"to effectively assess the merits of this motion." *Shaffer v. ACS Gov't Servs., Inc.*, 321 F.Supp.2d 682, 683–84 (D.Md. 2004).

Summary judgment is appropriate when the court, construing all evidence and drawing all reasonable inferences in the light most favorable to the non-moving party, finds that no genuine dispute exists as to any material fact, thereby entitling the movant to judgment as a matter of law. Fed.R.Civ.P. 56(a); *see In re Family Dollar FLSA Litig.*, 637 F.3d 508, 512 (4th Cir. 2011). Summary judgment must be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting former Fed.R.Civ.P. 56(e)) (alteration in original).

The Federal Arbitration Act, 9 U.S.C. §§ 1–16 ("FAA"), governs the court's review of a motion to compel arbitration. To prevail, the movant must show the existence of (1) a dispute between the parties; (2) a written arbitration provision that purports to cover the dispute; (3) a relationship between the transaction and

interstate or foreign commerce; and (4) the failure of a party to arbitrate the dispute. *See Whiteside v. Teltech Corp.*, 940 F.2d 99, 102 (4th Cir. 1991).

### B. Analysis

Defendant argues that Plaintiff's claims are governed by the Cardholder Agreement's arbitration provision. (ECF No. 7-1 at 6). Plaintiff contends that this dispute is not subject to arbitration because the parties never formed a binding arbitration agreement. (ECF No. 11 at 10).[4]

There are several threshold issues to address: (1) whether the presumption in favor of arbitrability applies to this dispute; (2) whether the court or an arbitrator should resolve this dispute; and (3) whether Maryland or South Dakota law governs this dispute.

First, Defendant argues that the presence of an arbitration provision creates a presumption that the parties agreed to arbitrate all disputes, including those regarding the validity of the contract as a whole. (ECF No. 7-1 at 17). Plaintiff contends that there is no presumption in favor of finding that an

---

[4] Plaintiff distinguishes between an "arbitration agreement" and a "delegation agreement" throughout her opposition, (ECF No. 11), but Plaintiff's challenge to whether the parties have agreed to arbitrate the dispute necessarily encompasses the issue of whether the parties have agreed to delegate arbitrability to the arbitrator. *See Berkeley Cty. Sch. Dist. v. Hub Int'l Ltd.*, 944 F.3d 225, 234 n.9 (4th Cir. 2019). Defendant has acknowledged that "the same arguments that apply to the Arbitration Provision apply also to the Delegation Clause." (ECF No. 15 at 8 n.1).

arbitration agreement exists. (ECF No. 11 at 18). "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Kop-Flex Emerson Power Transmission Corp. v. Int'l Ass'n of Machinists & Aerospace Workers Loc. Lodge No. 1784, Dist. Lodge No. 4*, 840 F.Supp.2d 885, 889 (D.Md. 2012) (quoting *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648-49 (1986)). Hence, "a defendant who seeks to compel arbitration . . . bears the burden of establishing the existence of a binding contract to arbitrate the dispute." *Minnieland Priv. Day Sch., Inc. v. Applied Underwriters Captive Risk Assurance Co., Inc.*, 867 F.3d 449, 456 (4th Cir. 2017). While federal courts have developed a robust presumption in favor of enforcing arbitration agreements, this presumption does not apply to the preliminary question concerning the formation of an arbitration agreement. *See Coady v. Nationwide Motor Sales Corp.*, 32 F.4th 288, 291 (4th Cir. 2022) (citing *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 302-03 (2010); *Noohi v. Toll Bros., Inc.*, 708 F.3d 599, 611 n.6 (4th Cir. 2013)) ("Before we may enforce the Arbitration Agreement, we must be satisfied that a valid agreement exists. The presumption favoring arbitration does not apply to this preliminary question of the Arbitration Agreement's validity."); *GKD-USA, Inc. v. Coast Mach. Movers*, 126 F.Supp.3d 553, 559 (D.Md. 2015) ("While there is a 'presumption in favor of arbitration,' that presumption applies to

9

questions concerning the scope of an arbitration clause, but 'the presumption does not apply to disputes concerning whether an agreement to arbitrate has been made.'"). Courts may not apply the presumption in favor of arbitrability to make arbitration agreements more enforceable than other contracts. *Morgan v. Sundance, Inc.*, 142 S.Ct. 1708, 1713 (2022) (quoting *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404, n.12 (1967)). Here, the presumption in favor of arbitrability does not apply because Plaintiff challenges the formation of an arbitration agreement, not its scope.[5]

Second, Defendant argues that an arbitrator should decide this dispute because Plaintiff contests the validity of the Cardholder Agreement as a whole, as opposed to the validity of the

---

[5] Plaintiff also argues that "[a]ny ambiguities about whether an arbitration agreement exists must be resolved against such as finding." (ECF No. 11 at 19). In support, Plaintiff cites *Dumais v. Am. Golf Corp.*, which construed a contract containing two change-in-terms provisions with conflicting statements about whether or not the arbitration provision is subject to unilateral modification in favor of finding the arbitration agreement illusory. 299 F.3d 1216, 1217, 1220 (2002). Here, unlike in *Dumais*, the Cardholder Agreement does not contain conflicting change-in-terms provisions. Because the parties do not contend that the Cardholder Agreement's language is ambiguous, the court construes the terms of the Cardholder Agreement according to its plain meaning. *See Rourke v. Amchem Prods., Inc.*, 863 A.2d 926, 941 (2004) ("In construing contracts, Maryland follows the objective interpretation principle. If the language of the contract is unambiguous, [courts] give effect to its plain meaning[.]"); *Coady*, 32 F.4th at 292 (considering the plain meaning of a change-in-terms clause to determine whether it applies to an arbitration provision).

10

Cardholder Agreement's arbitration provision. (ECF No. 7-1 at 18). Plaintiff contends that the court should decide this dispute because no arbitration agreement exists. (ECF No. 11 at 23-24). Because "an arbitration provision is severable from the remainder of a contract[,]" a challenge to the validity of an arbitration agreement is distinct from a challenge to the validity of a contract as a whole. *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 70-71 (2010) (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444-45 (2006)). While a challenge to the validity of a contract presumes that a contract has already been formed but should not be enforced, a challenge to the validity of an arbitration agreement contends that a contract to arbitrate was never formed. *See Johnson v. Cont'l Fin. Co., LLC*, No. 8:22-CV-02001-PX, 2023 WL 5804281, at *4 (D.Md. Sept. 7, 2023) (citing *Buckeye*, 546 U.S. at 443, 444 n.1; *Granite Rock*, 561 U.S. at 300; *Prima Paint*, 388 U.S. at 399). Section 4 of the FAA requires that the district court, rather than an arbitrator, decide whether the parties have formed an arbitration agreement. *Berkeley*, 944 F.3d 225, 234 (4th Cir. 2019).

Defendant erroneously conflates the concepts of contract *validity* and contract *formation*. Plaintiff argues that no contract to arbitrate this dispute exists, not that an arbitration contract exists but is unenforceable due to defects in the underlying contract. (ECF No. 11 at 24). Regardless of whether Plaintiff

11

challenges the formation of the arbitration agreement or the broader Agreement, the court should resolve this dispute. *See* 9 U.S.C. § 4; *Johnson*, 2023 WL 5804281, at *4 (holding that because the plaintiffs alleged that no arbitration agreement exists, "[t]his challenge plainly stays with the Court, regardless of whether Plaintiffs mount a direct challenge solely to the formation of the Arbitration Provision, or a broader attack on the formation of the Cardholder Agreement within which the Arbitration Provision sits.").

Third, Defendant argues that pursuant to the Cardholder Agreement's choice-of-law provision, South Dakota law governs this dispute. (ECF No. 7-1 at 13). Plaintiff contends that choice-of-law rules prescribe application of Maryland law. (ECF No. 11 at 21). State-law principles on contract formation, rather than a choice-of-law provision, govern challenges to an arbitration agreement's existence, *Noohi*, 708 F.3d at 607 (quoting *Hill v. Peoplesoft USA, Inc.*, 412 F.3d 540, 543 (4th Cir. 2005)), because application of a choice-of-law provision presupposes that the parties have formed a binding arbitration agreement, *Johnson*, 2023 WL 5804281, at *3 (citing *James v. Synovus Bank*, No. TDC-19-1137, 2020 WL 1479115, at *2 (D.Md. Mar. 26, 2020); *Archer W. Contractors, LLC v. Synalloy Fabrication, LLC*, No. CCB-14-3031, 2016 WL 930965, at *4 (D.Md. Mar. 11, 2016)) ("Although generally, the Court must honor the parties' agreement to apply selected

substantive state law, this presupposes that the agreement is binding in the first instance. But until the Court determines whether the Arbitration Provision was ever formed, it cannot enforce any of its terms, including a choice-of-law provision.").

Accordingly, Maryland choice-of-law principles determine which state's contract law applies here. *See Francis v. Allstate Ins. Co.*, 709 F.3d 362, 369 (4th Cir. 2013). In Maryland, "the law of the jurisdiction where the contract was made controls its validity and construction." *Kramer v. Bally's Park Place, Inc.*, 311 Md. 387, 390 (1988). Plaintiff's application for the credit card account as well as her acceptance of the Cardholder Agreement took place in Maryland. (ECF No. 3 ¶¶ 16, 28, 29). Thus, Maryland law applies to this dispute.[6]

Having addressed these threshold issues, one issue remains for analysis. Plaintiff argues that the Cardholder Agreement's arbitration provision lacks the consideration necessary to constitute a binding agreement because it is subject to a change-

---

[6] Defendant argues that South Dakota law governs this dispute but concedes that "[t]o the extent the Court determines that the Arbitration provision is severable from the rest of the Cardmember Agreement and that it is a separate contract formed in Maryland, then the Court may apply Maryland law as Plaintiff advocates." (ECF No. 15 at 8). This suggests that South Dakota law applies to the extent that the arbitration provision is not severable from the Cardholder Agreement. Given that the Supreme Court of the United States has authoritatively held that "an arbitration provision is severable from the remainder of the contract[,]" *Rent-A-Ctr.*, 561 U.S. at 71 (quoting *Buckeye*, 546 U.S. at 445), under Defendant's logic, Maryland law applies here.

in-terms provision allowing for unilateral modification without advance notice. (ECF No. 11 at 24-26). Defendant argues that the change-in-terms provision does not apply to the arbitration provision because it is located outside the four corners of the arbitration provision. (ECF No. 15 at 9).

Maryland law requires an arbitration agreement to be a valid contract, which must be supported by consideration in the form of a binding obligation. *Hill*, 412 F.3d at 543 (citing *Cheek v. United Healthcare of Mid-Atl., Inc.*, 835 A.2d 656, 661). An examination of whether an arbitration agreement is a valid contract is limited to the language of the arbitration agreement. *See id.* (citing *Cheek*, 835 A.2d at 664-65). Although an arbitration provision is severable from the underlying contract, a court must read the "construe the contract as a whole" to give effect to all the provisions constituting an arbitration agreement. *See Coady*, 32 F.4th at 291 (quoting *Schneider Elec. Bldgs. Critical Sys., Inc. v. W. Sur. Co.*, 165 A.3d 485, 490 (2017)).

Defendant likens the Cardholder Agreement's arbitration provision to the one in *Hill v. Peoplesoft USA, Inc.*, 412 F.3d at 542, which held that a freestanding arbitration agreement, signed by the parties, with no unilateral change-in-terms clause was not subject to a separate company policy, not signed by the parties, that contained a unilateral change-in-terms clause. (ECF No. 15 at 9). This analogy fares no better because Defendant improperly

14

conflates the arbitration *provision* and the arbitration *agreement*. Here, the arbitration agreement is analogous to the one in *Coady v. Nationwide Motor Sales Corp.*, 32 F.4th at 290, 292, which determined that a change-in-terms provision specifically declaring its applicability to an arbitration provision that is part of the same underlying contract is incorporated into the arbitration agreement. The Cardholder Agreement's arbitration provision is in the same underlying contract as the change-in-terms provision, which explicitly identifies the arbitration provision as one of the terms of the Cardholder Agreement it applies to: "The rates, fees and terms of this Agreement (including its Jury Trial Waiver and Arbitration Clause), may change and we may add or delete any term."  (ECF No. 7-5 at 3).  Thus, the Cardholder Agreement's arbitration provision is subject to the change-in-terms provision. *See also Jones v. Prosper Marketplace, Inc.*, No. GJH-21-1126, 2022 WL 834210, at *15 (D.Md. Mar. 21, 2022) (considering an arbitration provision in conjunction with the contract within which it was situated); *Caire*, 982 F. Supp. 2d at 594 (D.Md. 2013) (same); *Johnson*, 2023 WL 5804281, at *5 (same).

Defendant argues that alternatively, even if the Cardholder Agreement's arbitration provision is subject to the change-in-terms provision, the arbitration agreement is not illusory. (ECF No. 15 at 15-19).  An arbitration agreement is illusory when it is subject to a change-in-terms provision empowering one party to

15

decide whether to arbitrate a dispute – essentially rendering the arbitration agreement unenforceable. *See Coady*, 32 F.4th at 293 (2022) (holding that an arbitration agreement is illusory because its applicable change-in-terms clause gives the defendant the right to change or abolish the relevant contractual terms without notice); *Cheek*, 835 A.2d at 663 (same); *see also* 3 Williston on Contracts § 7:7 (4th ed. 2023) ("Where an illusory promise is made, that is, a promise merely in form, but in actuality not promising anything, it cannot serve as consideration.").

According to the Supreme Court of Maryland's decision in *Cheek v. United Healthcare of Mid-Atlantic, Inc.*, a change-in-terms provision allowing the defendant to modify unilaterally an arbitration provision "[']with or without notice' creates no real promise, and therefore, insufficient consideration to support an enforceable agreement to arbitrate[,]" because it empowers the defendant to revoke the arbitration agreement at any time. *Id.* at 662. Notice of unilateral changes alone, however, does not constitute adequate consideration without additional limitations. In *Holloman v. Circuit City Stores, Inc.*, the Supreme Court of Maryland found that a change-in-terms provision with robust restrictions confining the defendant's ability to change unilaterally the arbitration agreement to a single day in the year, preceded by 30-days' advance notice, provided adequate

16

consideration by binding the defendant to the preexisting agreement to arbitrate for 364 days. 894 A.2d 547, 592-93 (2006).

While the Cardholder Agreement's change-in terms provision states, "we will provide advance written notice of any changes[,]" the clause on notice is qualified by the condition, "*[w]hen required by law[.]*" (ECF No. 7-5 at 3) (emphasis added). This condition suggests that advance notice would not be provided when it is not required by law. Whether notice is actually required by law is dispositive here. Plaintiff asserts that the Cardholder Agreement's change-in-terms provision, like the one in *Cheek*, impermissibly allows unilateral modification of the arbitration provision without notice because Maryland law does not require notice of such changes. (ECF Nos. 11 at 25-28; 16-1 at 7-9). Defendant contends that the Cardholder Agreement's change-in-terms provision is distinguishable from the one in *Cheek* and analogous to the one in *Holloman*. (ECF No. 15 at 15). Defendant newly argues that federal law, specifically 12 C.F.R. §§ 1026.6(b)(2) and 1026.9(c)(2), requires credit card companies to provide notice of changes to dispute resolution. (*Id.* at 11-12).[7]

---

[7] In its Reply in Support of Motion to Compel Arbitration and Stay Proceedings and Strike Class Allegations, (ECF No. 15), Defendant does not respond to Plaintiff's argument that Maryland law does not require notice of unilateral changes to arbitration agreements, (ECF No. 11 at 27-28). By failing to respond, Defendant has conceded this point. *See Ferdinand-Davenport v. Children's Guild*, 742 F.Supp.2d 772, 777 (D.Md. 2010) (holding that in failing to respond to the defendant's arguments for why

Judge Xinis's decision in *Johnson v. Continental Finance Company, LLC*, a substantially similar case,[8] is instructive. In *Johnson*, Judge Xinis held that a change-in-terms clause permitting unilateral modifications "upon such notice to you *as is required by law*" does not impose any restrictions on the defendant's unfettered ability to revoke the arbitration agreement without notice, thus rendering the arbitration agreement illusory. *Johnson*, 2023 WL 5804281, at *7 (emphasis added). Like Defendant, the *Johnson* defendants also cite to 12 C.F.R. §§ 1026.6(b)(2) and 1026.9(c)(2) as evidence of federal law requiring notice of unilateral modification, but as Judge Xinis states, those regulations are irrelevant to the outcome because they "require[] only advance notice of any change to the 'statement that information about consumers' right to dispute transactions is included in the account-opening disclosures'; [they] do[] not require advance notice of changes to the dispute resolution process itself." *Id.* at *7 n.3. Judge Xinis concluded that the change-in-terms provision at issue was more akin to the one in *Cheek* than

---

her claim should be dismissed, a plaintiff abandoned her claim); *Stenlund v. Marriott Int'l, Inc.*, 172 F.Supp.3d 874, 887 (D.Md. 2016) ("In failing to respond to [defendant's] argument, Plaintiff concedes the point.").

[8] The parties in *Johnson* are represented by the same lawyers as in the action before this court and raise near identical arguments regarding whether a different cardholder agreement's unilateral change clause renders the arbitration provision illusory.

in *Holloman* because it did not require any notice at all, much less robust restrictions on the kind of notice required. *Id.* at *7.

Defendant's arguments analogizing the Cardholder Agreement's change-in-terms provision to the one in *Holloman* fail for the same reasons as in *Johnson*. "When required by law" and "as is required by law" are similarly toothless restrictions because both Defendant and the *Johnson* defendant fail to provide *any* law requiring notice of unilateral modifications to arbitration agreements. Like the change-in-terms provisions in *Johnson* and *Cheek*, the Cardholder Agreement's change-in-terms provision allows for unilateral modification without notice, thus providing no consideration to support a legally enforceable arbitration agreement. *See also Coady*, 32 F.4th at 293 ("Because the Modification Clause gives [the defendant] the right to change or abolish [the Arbitration Agreement's] policies, procedures, and benefits without notice, the Arbitration Agreement is illusory under Maryland law.").

For similar reasons, Defendant's request to strike class allegations also fails. Defendant argues that pursuant to the Cardholder Agreement's arbitration provision, Plaintiff has waived her right to participate in a class action. (ECF Nos. 7-1 at 20-21; 15 at 24-27). Because the Cardholder Agreement's arbitration provision is illusory, the court cannot enforce any of its terms.

19

Hence, Defendant's motion to compel arbitration and stay proceedings and to strike class allegations is denied. It is unnecessary to address the parties' remaining arguments about whether the change-in-terms provision allows for unilateral retroactive modification; whether the arbitration agreement violates Maryland public policy; whether all rights under the arbitration and delegation provisions have been assigned away by First Bank & Trust; whether Mercury is First Bank & Trust's agent; whether arbitration rights have been waived because Velocity, the current owner of Defendant's credit card account, sued Defendant in court instead of choosing arbitration; and whether the implied covenant of good faith and fair dealing prevents a party from invoking a unilateral change-in-terms clause to revoke an arbitration agreement.

**IV. Conclusion**

For the foregoing reasons, Defendant's motion to compel arbitration and stay proceedings and to strike class allegations will be denied, and Plaintiff's motion for leave to file a surreply will be granted in part and denied in part. A separate order will follow.

                                                          /s/
                                            DEBORAH K. CHASANOW
                                            United States District Judge