IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ANGELITA BAILEY, on her own     :
behalf and on behalf of all
others similarly situated     :

    v.                             :    Civil Action No. DKC 23-0827

                                 :

MERCURY FINANCIAL, LLC

                                 :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this consumer law class action are the motion for final approval of class action settlement, (ECF No. 42), motion for approval of incentive award to the representative plaintiff, (ECF No. 43), motion to approve *cy pres* award, (ECF No. 44), and motion for award of attorney's fees and expenses to class counsel, (ECF No. 45), filed by Plaintiff Angelita Bailey ("Representative Plaintiff"). The court held a final fairness hearing on November 5, 2025. For the following reasons, the motion for final approval of class action settlement will be granted, the motion for approval of incentive award to the representative plaintiff will be granted, the motion to approve *cy pres* award will be granted, and the motion for award of attorney's fees and expenses to class counsel will be granted in part.

## I.    Background

The factual circumstances of this case are set out in full in a prior opinion. (ECF No. 20, at 1-4). The court provided a short synopsis of the facts in the July 18, 2025, opinion regarding the joint motion for preliminary approval of the class action settlement:

> In short, Representative Plaintiff alleges that Defendant extended consumer credit lines to numerous Marylanders without having a lending license in Maryland. (ECF No. 3). On her own behalf and on behalf of those similarly situated, Representative Plaintiff filed this suit on January 25, 2023, in the Circuit Court for Montgomery County, Maryland. (ECF No. 3). Defendant removed the case to this court on March 24, 2023. (ECF No. 1). Representative Plaintiff alleges violations of the Maryland Consumer Loan Law, Md. Code Ann., Com. Law. §§ 12-301 et seq. ("MCLL"), the Maryland Consumer Debt Collection Act, Md. Code. Ann., Com. Law §§ 14-201 et seq., and the Maryland Consumer Protection Act, Md. Code Ann., Com. Law §§ 12-101 et seq., and Maryland common law. (ECF No. 3).

(ECF No. 37, at 1-2). After removal, Defendant Mercury Financial, LLC ("Defendant" or "Mercury")[1] moved to compel arbitration, stay proceedings, and strike class allegations on March 31, 2023. (ECF No. 7). After this court denied the motion on September 26, 2023,

---

[1] During the final fairness hearing and in their supplement to the motion for final approval, the parties noted that Mercury Financial was recently sold to Atlanticus Holdings Corporation. (ECF No. 49, at 2). Regardless of whether this change in ownership resulted in a change of Defendant's operating name, the court will continue to refer to Defendant as "Mercury" for ease of reference.

(ECF No. 20), Defendant appealed to the United States Court of Appeals for the Fourth Circuit on October 24, 2023, (ECF No. 23). The case was stayed in this court pending appeal. (ECF No. 24). On March 11, 2025, the Fourth Circuit affirmed this court's ruling, (ECF No. 28), and denied Defendant's petition for rehearing or rehearing *en banc* on April 8, 2025, (ECF No. 30).

The parties filed a joint motion for preliminary approval of the settlement on June 25, 2025. (ECF No. 36). On July 18, 2025, this court deferred "preliminary approval of class action settlement, and for approval of the form, manner and administration of notice, pending receipt of amended notices." (ECF No. 37, at 13). The parties filed an updated joint motion for preliminary approval after addressing the court's concerns, (ECF No. 39), and this court granted preliminary approval on July 24, 2025. (ECF No. 40, at 3).

The preliminarily approved agreement ("Settlement Agreement") created a class of approximately 57,000 individuals ("Settlement Class," individually "Class Members"). (ECF No. 42-2, at 7). The Settlement Class was defined as "[a]ll Maryland residents with credit card accounts for credit cards issued by First Bank & Trust, Brookings SD ('FB&T') and serviced by Mercury on or after August 2018, and the borrower made one or more payments on the loan." (*Id.*). All employees or representatives of Defendant, as well as

3

all court personnel, were excluded. (*Id.*). The Settlement Agreement also created a settlement fund of $5,750,000 ("Common Fund"), which would be used to fund court-approved attorneys' fees and expenses as well as payments to Class Members. (*Id.* at 11). Any unclaimed settlement payments would then be distributed according to a *cy pres* plan, which would donate the first $5,000 to Economic Action Maryland; the next $5,000, if any, to the Maryland Legal Aid Bureau, Inc.; the next $5,000, if any, to the National Consumer Law Center; and any remaining funds to the University of Maryland Francis King Carey School of Law. (ECF No. 42-2, at 13). The Defendant also agreed to pay the Representative Plaintiff an incentive payment of $15,000, separate from the Common Fund. (*Id.*) In exchange, the Representative Plaintiff and Class Members would release any "claims which share the factual predicate of the Complaint" against Defendant. (*Id.* at 5-6). Finally, the court designated Richard S. Gordon and Benjamin H. Carney of the law firm Gordon, Wolf & Carney, Chtd., as class counsel for the Settlement Class ("Class Counsel"). (ECF No. 40, at 6).

Notice of the settlement was mailed to all 57,392 Class Members and emailed to the 51,590 Class Members who had shared an email address with Defendant. (ECF No. 42-1, at 11).

## II.  Analysis

The court has considered the terms of the Settlement Agreement, the motion for approval of incentive award to the Representative Plaintiff, the motion to approve *cy pres* award, the motion for award of attorneys' fees and expenses to Class Counsel, and the statements of counsel for both parties at the final fairness hearing held on November 5, 2025.  The court will approve the settlement, certify the class, grant the incentive payment, grant the *cy pres* award to the designated recipients, and grant reduced attorneys' fees of 25% of the settlement fund.

### A.    Rule 23 Class Certification

Before a class action can be certified pursuant to Federal Rule of Civil Procedure 23, the class must meet each of the four prerequisites identified in Rule 23(a) and fit within one of the three categories identified in Rule 23(b).  Fed.R.Civ.P. 23. District courts must pay "undiluted, even heightened, attention" to these requirements when certifying a class for the purpose of settlement. *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 620 (1997); *see also Grice v. PNC Mortg. Corp. of Am.*, No. 97-cv-3084-PJM, 1998 WL 350581, at *2 (D.Md. May 21, 1998) ("Despite the parties' agreement, class certification must be carefully scrutinized.").

1.    **Rule 23(a) Prerequisites**

> Under Rule 23(a), a group of plaintiffs may sue in a class action if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

*In re Retina Grp. of Wash. Data Sec. Incident Litig.*, No. 24-cv-0004-DKC, 2025 WL 2030241, at *6 (D.Md. July 21, 2025). The Settlement Class meets the requirements of Rule 23(a). First, considering numerosity, the Settlement Class consists of greater than 57,000 persons. (ECF No. 42-1, at 9). Joinder would clearly be impracticable for a group of that size, and courts have found much smaller classes to be sufficiently numerous to justify a class. *See CASA de Md., Inc. v. Arbor Realty Tr., Inc.*, No. 21-cv-1778-DKC, 2024 WL 1051120, at *3 (D.Md. Mar. 11, 2024) ("A class consisting of as few as 25 to 30 members raises the presumption that joinder would be impractical." (quoting *Dameron v. Sinai Hosp. of Balt., Inc.*, 595 F.Supp. 1404, 1408 (D.Md. 1984))).

Second, there are questions of law and fact common to the Class Members. Foundational questions like "whether any cardholder agreement exists under Maryland law" and "[w]hether the Defendant's actions did, in fact, violate the law" undergird all claims from the Class Members. (ECF No. 42-1, at 33). Each of

these questions is capable of class-wide resolution, as their determination "will resolve an issue that is central to the validity of each one of the claims in one stroke." *In re Retina Grp.*, 2025 WL 20230241, at *6 (quoting *CASA de Md., Inc.*, 2024 WL 1051120, at *3). All the Class Members also suffered "the same alleged injury resulting from the allegation that Mercury charged interest and fees even though it was not licensed to make loans in Maryland." (ECF No. 42-1, at 33).

Finally, the representative party has claims typical of the class, and the court believes she has fairly and adequately protected the interests of the class. The Representative Plaintiff alleges that she was harmed "from the same practice and course of conduct by the same defendant" as others in the Settlement Class, (*Id.* at 34), satisfying the typicality requirement. Both the Representative Plaintiff and Class Counsel have diligently pursued this action. Class Counsel "are experienced in handling consumer class actions and complex consumer litigation and have served as certified class counsel in dozens of consumer class actions." (*Id.* at 35). This proposed Settlement Class has met the requirements of Rule 23(a).

## 2.  Rule 23(b) Requirements

A class must also meet the requirements of one of the three categories in Rule 23(b). This case falls into Rule 23(b)(3),

which permits class certification where "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed.R.Civ.P. 23(b)(3).

As discussed above, there are common questions of law and fact shared by the Class Members. All stem from their financial relationship with Defendant, and all relate to whether the Defendant was complying with relevant Maryland consumer protection laws. This court is unaware of any other individual actions related to this consumer relationship being pursued by other Class Members. Finally, a class action is more efficient than nearly 57,000 Class Members each litigating their individual claims. (*See* ECF No. 42-1, at 36). The court finds that the requirements of Rule 23(a) and (b)(3) are met and will grant final certification of the Settlement Class.

**B.    Final Approval of the Settlement Agreement**

Under Rule 23(e), the claims of a certified class can only be settled with the court's approval. The court must conduct a hearing and make a "finding that it is fair, reasonable, and adequate" prior to approving a settlement agreement that binds the class. Fed.R.Civ.P. 23(e)(2). "In doing so, the court's 'primary concern . . . is the protection of class members whose rights may not have

8

been given adequate consideration during the settlement negotiations.'" *CASA de Md., Inc.*, 2024 WL 1051120, at *4 (quoting *In re Jiffy Lube Secs. Litig.*, 927 F.2d 155, 158 (4th Cir. 1991)).

### 1. Fairness and Reasonableness

When evaluating the fairness and reasonableness of a proposed settlement agreement, courts consider: "(1) the presence or absence of collusion among the parties; (2) the posture of the case at the time settlement is proposed; (3) the extent of discovery that has been conducted; and (4) the circumstances surrounding the negotiations and the experience of counsel." *Id.* (quoting *Graham v. Famous Dave's of Am., Inc.*, No. 19-cv-0486-DKC, 2022 WL 17584274, at *7 (D.Md. Dec. 12, 2022)). "The purpose of this inquiry is to protect against the danger that counsel might agree to settle for an inadequate amount to secure a fee." *Id.* (quoting *Graham*, 2022 WL 17584274, at *7).

This factor supports approval of the settlement. This case was removed to this court in March 2023 and was thoroughly litigated; one of this court's earlier decisions was appealed to the Fourth Circuit. (ECF No. 23). Following approximately two years of litigation, the parties "have had ample opportunity to understand and ventilate the issues presented by this case." (ECF No. 42-1, at 21). There is no evidence of collusion, and the parties represent that the settlement is the result of more than

two years of negotiations, including two "extended and intensive mediation sessions, each supervised by a neutral retired Judge." (*Id.* at 21-22). The parties exchanged informal discovery to support their mediation conversations. (ECF No. 42-1, at 21). Finally, both parties have been represented by experienced counsel throughout the different stages of this litigation and settlement. The court finds that this settlement is fair and reasonable.

### 2.    Adequacy

As this court previously explained in *CASA de Maryland, Inc.*:

> When evaluating whether a proposed settlement is adequate, courts consider: "(1) the relative strength of the plaintiff's case on the merits and probability of success at trial; (2) the anticipated duration and expense of additional litigation; (3) the solvency of the defendants and the likelihood of recovery on a litigated judgment; and (4) the degree of opposition to the settlement." *Graham*, 2022 WL 17584274, at *7 (quoting *Singleton* [*v. Domino's Pizza, LLC*], 976 F.Supp.2d [665,] 679 [(D.Md. 2013)]). "The purpose of this inquiry is to 'weigh the likelihood of the plaintiff's recovery on the merits against the amount offered in settlement.'" *Id.* (quoting *In re Mid-Atl. Toyota Antitrust Litig.*, 564 F.Supp. [1379,] 1384[ (D.Md. 1983)]).

*CASA de Md., Inc.*, 2024 WL 1051120, at *5. Considering each of the factors outlined above, the adequacy of the Settlement Agreement weighs in favor of approving the final settlement.

While the probability of success at trial is difficult to determine, proceeding through litigation is always risky.

10

"Although Representative Plaintiff believes that she and the Class would have prevailed, Defendant would have opposed Representative Plaintiff's motion for class certification, would have likely filed dispositive motions, and would have vigorously defended itself at trial." (ECF No. 42-1, at 23). Defendant "would almost certainly appeal any unfavorable judgment," and "[a]chieving a litigated resolution would have taken several more years in addition to the two and a half years already invested." (*Id.* at 23-24). There has been no assertion that Defendant is at risk of becoming insolvent, so a payout at the end of the litigation process was a possibility. But as Representative Plaintiff points out, "[t]here is no certainty in litigation." (*Id.* at 24). This Settlement Agreement ensures a positive outcome for the Class Members and avoids potentially years of litigation. Finally, after providing notice to approximately 57,000 Class Members, Class Counsel have received zero objections. (ECF No. 42-1, at 12). On balance, the adequacy of the settlement weighs in favor of approval. Considering all the factors outlined above, the court will approve the settlement.

### C.  Attorneys' Fees, Expenses, and Service Awards

Under Rule 23, a court may "award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed.R.Civ.P. 23(h). Plaintiff requests attorneys'

11

fees of 33⅓% of the Settlement Fund.  (ECF No. 45-1, at 9).
Plaintiff also requests reimbursement of litigation expenses of
$13,896.25, (ECF No. 45, at 1), and a service award of $15,000 for
the Representative Plaintiff, (ECF No. 43, at 1).  The court will
grant both the reimbursement of litigation expenses and the service
award for the Representative Plaintiff but will reduce the
attorneys' fees to 25% of the Settlement Fund.

### 1.  Attorneys' Fees

Earlier this year, this court discussed the two approaches to
determining if an attorneys' fee award is reasonable:

> "In determining whether an attorney's fee
> award is reasonable, courts generally take two
> approaches: (1) the 'percentage of recovery'
> or 'percentage of the fund' method; or (2) the
> 'lodestar' method." *Graham*, 2022 WL 17584274,
> at *10 (quoting *Singleton*, 976 F.Supp.2d at
> 681).  "Although this circuit has not decided
> which approach to adopt, the 'current trend
> among the courts of appeal favors the use of
> a percentage method to calculate an award of
> attorneys' fees in common fund cases.'" *Id.*
> (quoting *Singleton*, 976 F.Supp.2d at 681).
> When the percentage of the fund method is
> used, it is supplemented with a lodestar
> cross-check.

*In re Retina Grp.*, 2025 WL 2030241, at *10 (quoting *CASA de Md.,
Inc.*, 2024 WL 1051120, at *6).  In line with the trend in this
circuit, this court will review the fee request under the
"percentage of the fund" method and use the lodestar method as a
cross-check.

12

**a.    "Percentage of the Fund" Method**

According to this court in *CASA de Maryland*:

> "Under the percentage of the fund method, the
> court awards attorneys' fees as a percentage
> of the common fund used to pay class members."
> *Graham*, 2022 WL 17584274, at *10 (first citing
> *Blum v. Stenson*, 465 U.S. 886, 900 n.16
> (1984); then citing *Singleton*, 976 F.Supp.2d
> at 681).  When using the percentage of the
> fund method, district courts in this circuit
> typically analyze: "(1) the results obtained
> for the class; (2) the quality, skill, and
> efficiency of the attorneys involved; (3) the
> risk of nonpayment; (4) objections by members
> of the class to the settlement terms and/or
> fees requested by counsel; (5) awards in
> similar cases; (6) the complexity and duration
> of the case; and (7) public policy."  *Id.*
> (quoting *Singleton*, 976 F.Supp.2d at 682).
> "The factors 'need not be applied in a
> formulaic way,' and no one factor is
> necessarily dispositive."  *Id.*  (quoting
> *Singleton*, 976 F.Supp.2d at 682).

*CASA de Md., Inc.*, 2024 WL 1051120, at *6.  While Class Counsel

request 33⅓% of the Settlement Fund, after considering the relevant

factors, the court will decrease this award to 25% of the

Settlement Fund.

**1)    Results Obtained for the Class**

"In the Fourth Circuit, 'the most critical factor in

calculating a reasonable fee award is the degree of success

obtained.'" *Decohen v. Abbasi, LLC*, 299 F.R.D. 469, 481 (D.Md.

2014) (quoting *McKnight v. Cir. City Stores, Inc.*, 14 Fed.App'x

147, 149 (4th Cir. 2001)).  Class Counsel obtained a "guaranteed,

non-reversionary common settlement fund of $5.75 million plus Mercury's agreement to pay an incentive payment of $15,000 to the Representative Plaintiff separate from and in addition to the Common Fund." (ECF No. 45-1, at 20). The settlement does not include a claims process, meaning all Class Members that the Settlement Administrator can locate will receive a settlement check. (*Id.* at 20-21). With Class Counsel's requested one-third of the Settlement Fund and other costs removed, each Class Member would receive approximately $66.45 from the settlement. (*Id.* at 12).

Class Counsel in this case characterize their work as seeking "to enforce the important public policy of the MCLL, which the Legislature enacted to protect Maryland consumers when opening credit cards and taking out loans." (ECF No. 45-1, at 35). While this is a noble goal, it is not quite borne out by the settlement. Class Counsel represented at the final fairness hearing that they had raised the business of the Defendant to state regulators, who did not appear interested in pursuing any action. *See also* (*Id.*) ("to Class Counsel's knowledge, to date, Maryland regulators have taken no action against Mercury."). In the Complaint, Representative Plaintiff initially sought compensatory damages, "damages for emotional distress and mental anguish," disgorgement, restitution, and declaratory relief establishing that "Mercury was

required to be licensed under the MCLL," "Plaintiff and Class Members' loans and agreements with Defendant are void and unenforceable," and "Mercury never had any right to collect any money from Plaintiff or Class Members." (ECF No. 3, at 20-21). The Settlement Agreement includes payment to the Class Members but does not achieve any of the declaratory relief requested.[2] Ultimately, Plaintiff is only receiving a portion of the relief she requested in her complaint. *See Carroll v. Wolpoff & Abramson*, 53 F.3d 626, 630 (4th Cir. 1995) (affirming a reduced fee and commenting, "We do not disparage the value of appellant's efforts in clarifying the application of the statute. At the same time, however, appellant achieved no equitable relief of any kind"). In fact, upon final approval, Class Members will:

> waive any defense that the cardholder agreements as a whole do not exist under Maryland law and, expressly accept and agree that the cardmember agreements governing the Accounts are valid and enforceable and that Releasees may collect, continue to collect, and pursue legal action ("collection actions")

---

[2] Class Counsel represented at the final fairness hearing and in their supplemental filing that Mercury's license is now a moot point. "Plaintiff's request in her state-court complaint for a declaration that Mercury must be licensed has been overtaken by events – namely, the sale of Mercury to Atlanticus, which has already (through its subsidiary) settled the Commissioner's licensing claims." (ECF No. 49, at 3). The sale took place in September 2025, well after the proposed settlement in this case. The events concerning Atlanticus say nothing about whether Mercury lacked a necessary license while it serviced the loans. Furthermore, Plaintiff has not addressed the bases of her other claims for declaratory relief.

> on any outstanding balances on the Accounts;
> and that Plaintiff and Class Members expressly
> waive, and agree not to assert, any defenses
> or claims related to the claims released in
> this lawsuit in response to any such
> collection actions.

(ECF No. 42-1, at 16). Class action settlements in this circuit certainly include waiver of claims that share the same "factual predicate" of the complaint. *See McAdams v. Robinson*, 26 F.4th 149, 160 (4th Cir. 2022). But a reduction from 33⅓% to 25% adequately compensates Class Counsel while acknowledging that the compromise achieved monetary relief but no declaratory relief. *Cf*. *Decohen*, 299 F.R.D at 481 (finding one third of the settlement an appropriate fee award where "[i]n addition to monetary relief, [defendant] will also cancel outstanding balances for class members, dismiss pending lawsuits against class members, and contact credit reporting agencies on class members' behalf").

### 2) Quality, Skill, and Efficiency of the Attorneys Involved

Class Counsel in this case are experienced litigators who pursued the matter diligently. In addition to their experience representing plaintiffs in other class actions, (*see* ECF No. 45-1, at 21), Class Counsel pursued this matter both in this court and through an appeal to the Fourth Circuit. Class Counsel engaged in settlement talks with the defense over the course of fifteen months both before and after the appeal, (*Id.* at 11), and

16

thoroughly litigated Defendant's motion to compel arbitration and
stay proceedings and to strike class allegations, *see* (*Id.*).  The
court is satisfied that Class Counsel acted with quality, skill,
and efficiency.

**3)   Risk of Nonpayment**

The court also considers the risk that the attorneys would
not be paid.

> "In determining the reasonableness of an
> attorneys' fee award, courts consider the
> relative risk involved in litigating the
> specific matter compared to the general risks
> incurred by attorneys taking on class actions
> on a contingency basis." *Boyd* [*v. Coventry
> Health Care Inc.*], 299 F.R.D. [451,] 464
> [(D.Md. 2014)] (quoting *Jones v. Dominion Res.
> Servs., Inc.*, 601 F.Supp.2d 756, 762
> (S.D.W.Va. 2009)).  "The risk undertaken by
> class counsel is evaluated by, among other
> things, the presence of government action
> preceding the suit, the ease of proving claims
> and damages, and, if the case resulted in
> settlement, the relative speed at which the
> case was settled." *Id.* (first citing *Jones*,
> 601 F.Supp.2d at 762; then citing *Strang v.
> JHM Mortg. Sec. Ltd. P'ship*, 890 F.Supp. 499,
> 503 (E.D.Va. 1995) (finding that risks to
> plaintiffs' counsel were minimized by
> settlement within six-months from the filing
> of the complaint and consequently reducing the
> percentage award from 30% to 25% of the
> Settlement Fund)).

*In re Retina Grp.*, 2025 WL 20230241, at *11 (quoting *CASA de Md.,
Inc.*, 2024 WL 1051120, at *7).

Class Counsel litigated this case on a contingency fee basis,
(ECF No. 45-1, at 23), meaning there was a meaningful risk that

they would not get paid.  The case was a challenge to Mercury's argument "that it was not bound by the licensing requirements of the MCLL (or any other law for that matter)." (*Id.* at 24).  The parties thoroughly litigated this case for an extended period, including on appeal with the Fourth Circuit.  Defendants removed the case to this court in March 2023, (ECF No. 1), and the parties notified the court that a settlement had been reached in May 2025, (ECF No. 32).  This litigation history over two years demonstrates the real risk of nonpayment for Class Counsel.  *See CASA de Md.*, 2024 WL 1051120, at *7 ("The fact that the parties litigated the case for over two years before reaching a settlement further demonstrates the risk to class counsel."); *cf. In re Retina Grp.*, 2025 WL 2030241, at *11 (reducing the percentage award from 33.33% to 30% because the parties had been litigating for about eleven months before settling).

### 4) Objection

The notice materials included notice to the Class Members that Class Counsel would be requesting one-third of the Common Fund as attorneys' fees.  (ECF Nos. 45-1, at 26; 45-4, at 1; 45-5, at 2).  As of the filing of the motion for final approval, no Class Members had objected to the Settlement.  (ECF No. 42-1, at 12).  Class Counsel also notes that the lack of objections "does not mean that the Class was silent.  Indeed, during the notice

period, Class Counsel heard from hundreds of Class Members. The Class Members were consistently enthusiastic about the Settlement." (ECF No. 45-1, at 27). "The lack of objections to the specific amount of attorneys' fees 'tends to show that at least from the class members' perspective, the requested fee is reasonable for the services provided and the benefits achieved by class counsel.'" *In re Retina Grp.*, 2025 WL 20230241, at *11 (quoting *CASA de Md., Inc.*, 2024 WL 1051120, at *7).

### 5)   **Awards in Similar Cases**

When considering awards in similar cases, "courts look to cases of similar size, rather than similar subject matter." *Boyd,* 299 F.R.D. at 465. The *Boyd* court looked to a 2010 study that showed "for class recoveries in the range of $2.8 to $5.3 million, the mean attorneys' fee percentage award from 1993–2008 was approximately 26.4%, and the median was 25.0%." *Id.* (citing Theodore Eisenberg & Geoffrey P. Miller, *Attorney Fees and Expenses in Class Action Settlements: 1993–2008,* 7 J. Empirical Legal Stud. 248, 265 T.7 (2010)). An updated study found that the average fee percentage for class action recoveries between $3.9 and $6.5 million was 27.4%. *See* Theodore Eisenberg, Geoffrey Miller, & Roy Germano, *Attorneys' Fees in Class Actions: 2009– 2013*, 92 N.Y.U. L. Rev. 937, 948 (2017). Overall, the authors found "as recovery amount increases, the ratio of the size of the

19

attorneys' fee relative to the size of the recovery (i.e., the fee percentage) tends to decrease." *Id.*

Class Counsel assert that "multiple recent decisions of this Court and others have recognized that in the Fourth Circuit, an attorney's fee award of one-third of a common settlement fund in a consumer class action is appropriate." (ECF No. 45-1, at 27 (citing *Boger v. Citrix Sys., Inc.*, No. 19-cv-01234-LKG, 2023 WL 1415625, at *9 (D.Md. Jan. 31, 2023))). But many of the cases they cite to for that proposition involve common funds orders of magnitude smaller than the one in this case. *See, e.g.*, *Boger*, 2023 WL 1415625, at *2 (finding one third of a $2,750,000 recovery reasonable at the preliminary approval stage); *Starr v. Credible Behav. Health, Inc.,* No. 20-cv-2986-PJM, 2021 WL 2141542, at *5 (D.Md. May 26, 2021) ($575,000 recovery); *McDaniels v. Westlake Servs., LLC*, No. 11-cv-1837-ELH, 2014 WL 556288, at *13 (D.Md. Feb. 7, 2014) ($520,000); *Decohen*, 299 F.R.D. at 476 ($3,050,000); *Kirkpatrick v. Cardinal Innovations Healthcare Sols.*, 352 F.Supp.3d 499, 503, 505 (M.D.N.C. 2018) ($748,527.08); *Phillips v. Triad Guar. Inc.*, No. 09-cv-71, 2016 WL 2636289, *1 (M.D.N.C. May 9, 2016) ($1,600,000). Given the size of the Common Fund in this case and the percentages awarded to attorneys for recoveries of a similar size, it is reasonable to reduce the award to 25% of the Common Fund.

**6)    Complexity and Duration of the Litigation**

This court recently discussed the factors considered as part of the complexity and duration prong:

> "In evaluating the complexity and duration of the litigation, courts consider not only the time between filing the complaint and reaching settlement, but also the amount of motions practice prior to settlement, and the amount and nature of discovery." *Graham*, 2022 WL 1758427, at *11 (quoting *Singleton*, 976 F.Supp.2d at 686). "Additionally, 'courts consider whether negotiations were hard fought, complex, or arduous.'" *Id.* (quoting *Singleton*, 976 F.Supp.2d at 686).

*In re Retina Grp.*, 2025 WL 20230241, at *12 (quoting *CASA de Md., Inc.*, 2024 WL 1051120, at *7). As mentioned previously, this case went up on appeal to the Fourth Circuit, (ECF No. 23), following this court's decision on Mercury's motion to compel arbitration and stay proceedings and to strike class allegations, (ECF No. 20). Class Counsel fully litigated the issue on appeal and in this court and participated in extensive mediation sessions – both before and after the appeal – to reach this result. The parties exchanged informal discovery, (ECF No. 42-1, at 21), but ultimately did not argue any additional motions before settling.

This is well-trod ground, however, for Class Counsel, who have pursued at least three other cases substantially like this one in this court within the past two years. *See Johnson v. Cont'l Fin. Co., LLC,* No. 22-cv-02001-PX; *Crider v. Cont'l Finance Co.,*

21

*LLC*, No. 23-cv-00854-PX; and *Ford v. Genesis Fin. Sols., Inc.*, No.
23-cv-02156-DLB.    In each of these cases, Class Counsel are
representing plaintiffs in putative class actions challenging
lenders that extended credit cards to Maryland consumers without
being licensed under Maryland consumer protection laws.    *See
Johnson v. Cont'l Fin. Co., LLC,* 690 F.Supp.3d 520, 523 (D.Md.
2023), *aff'd,* 131 F.4th 169 (4th Cir. 2025) (consolidating two
cases brought by Class Counsel); *Ford v. Genesis Fin. Sols., Inc.,*
726 F.Supp.3d 441, 445 (D.Md. 2024), *aff'd,* No. 24-1341, 2025 WL
1540933 (4th Cir. May 30, 2025).    These cases are so similar that
the Fourth Circuit affirmed this court's earlier decision in this
case saying "[w]e considered and rejected these same arguments in
*Johnson v. Continental Finance Co.,* No. 23-2047 (4th Cir. 2025).
For the reasons stated in that case, we affirm the district court's
judgment." (ECF No. 28-2, at 3).    Class Counsel assured the court
at the final fairness hearing that the time included in their
lodestar cross check in support of this request for attorney's
fees was not double counted as part of their work for the *Johnson*
case while both were up on appeal.    Notably, settlement is a
possibility in the other cases.    A motion to approve settlement is
pending in the cases consolidated in *Johnson*.    Joint Motion for
Preliminary Approval of Settlement and Form, Manner and
Administration of Notice, *Johnson,* No.22-cv-2001-PX (D.Md. Aug.

28, 2025), ECF No. 73.  A petition for certiorari concerning the arbitration issue is pending in the Supreme Court in *Ford.* Petition for Writ of Certiorari, *Genesis Fin. Sols., Inc. v. Ford*, No. 25-311 (U.S. Sep. 15, 2025).  The defendant in *Ford* might be willing to withdraw the petition if settlement is reached; the latest status report in September 2025 reported that the parties were trying to schedule mediation with a retired judge during October 2025. Joint Status Report, *Ford*, No. 23-cv-2156-DLB (D.Md. Sept. 5, 2025), ECF No. 37.  Another status report was due November 7, 2025, but none has been filed.  *See* Paperless Order, *Ford*, No. 23-cv-2156-DLB (D.Md. Sept. 5, 2025), ECF No. 38.  Regardless, it is apparent that Class Counsel have found a category of cases to pursue that share the same characteristics.  The substantially similar cases lessen the complexity of this case, weighing in favor of reducing the percentage.

    **7)  Public Policy**

"[I]n assessing the reasonableness of the requested attorneys' fees, the court must strike the appropriate balance between promoting the important public policy that attorneys continue litigating class action cases that 'vindicate rights that might otherwise go unprotected,' and perpetuating the public perception that 'class action plaintiffs' lawyers are overcompensated for the work that they do.'"  *Boyd,* 299 F.R.D. at

466 (quoting *Third Circuit Task Force Report*, 208 F.R.D. 340, 342, 344 (Jan. 15, 2002)).  This court has previously highlighted the importance of this factor:

> Courts in this circuit have recognized that "[t]his concern is not a trivial one and requires attentiveness ... in awarding fees." [*In re*] *The Mills Corp.* [*Sec. Litig.*], 265 F.R.D. [246,] 263[ (E.D.Va. 2009)]; *see also* Domonoske [*v. Bank of America, N.A.*], 790 F.Supp.2d [466,] 476[ W.D.Va. 2011)] ("the court notes the need to 'properly balance[ ] the policy goals of encouraging counsel to pursue meritorious [litigation in the relevant legal field, consumer litigation here,] . . . while [also] protecting against excessive fees.'" (quoting *In re Nortel Networks Corp. Sec. Litig.*, 539 F.3d 129, 132 (2ⁿᵈ Cir. 2008))); *The Kay Company*[ *v. Equitable Prod. Co.*], 749 F.Supp.2d [455,] 469[ (S.D.W.Va. 2010)] ("[b]ecause of the damage caused by the perception of overcompensation of attorneys in class action suits, lawyers requesting attorneys' fees and judges reviewing those requests must exercise heightened vigilance to ensure the fees are in fact reasonable beyond reproach and worthy of our justice system.").

*Singleton*, 976 F.Supp.2d at 687.  When considering the public policy interests related to attorneys' fees, the court finds that a reduction in the attorneys' fees to 25% of the common fund is appropriate.  *See Id.* (reducing attorneys' fees to 25% "in light of these competing public policy concerns"); *Carroll*, 53 F.3d at 630 (affirming the district court's decision to lower the attorneys' fee in a case involving a technical violation of the Fair Debt Collection Practices Act ("FDCPA"), because a higher

award would "over-encourage litigation alleging technical violations of [the FDCPA] and other statutes aimed principally at collecting attorney's fees."). The public policy considerations weigh in favor of reducing the attorneys' fees to 25% of the Common Fund.

### b.    Lodestar Cross-Check

As in prior decisions, the court uses a lodestar cross-check to confirm the proposed fee award.

> The purpose of a lodestar cross-check is to determine whether a proposed fee award is excessive relative to the hours reportedly worked by counsel, or whether the fee is within some reasonable multiplier of the lodestar. *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d [294, 306 (3d Cir. 2005), as amended (Feb. 25, 2005)] ("The lodestar cross-check serves the purpose of alerting the trial judge that when the multiplier is too great, the court should reconsider its calculation under the percentage-of-recovery method"); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002) ("[T]he lodestar may provide a useful perspective on the reasonableness of a given percentage award."). Importantly, "where the lodestar fee is used 'as a mere cross-check' to the percentage method of determining reasonable attorneys' fees, 'the hours documented by counsel need not be exhaustively scrutinized by the district court.'" *In re Royal Ahold N.V.* [*Sec. & ERISA Litig.*], 461 F.Supp.2d [383,] 385[ D.Md. 2006]) (quoting *Goldberger* [*v. Integrated Res., Inc.*], 209 F.3d [43, 50 (2d Cir. 2000)]).

*In re Retina Grp.*, 2025 WL 2030241 at *13 (quoting *CASA de Md., Inc.*, 2024 WL 1051120, at *9).

Class Counsel assert that they have spent over 1,400 hours litigating this case, (ECF No. 45-1, at 30), translating to a lodestar of $924,650, (*Id.* at 31). With their requested award of 33⅓% of the settlement fund, the multiplier would come out to 2.07. (*Id.* at 32). With the court's reduction to 25% of the settlement fund, the lodestar multiplier is approximately 1.55. "Courts have generally held that lodestar multipliers falling between 2 and 4.5 demonstrate a reasonable attorneys' fee." *CASA de Md., Inc.*, 2024 WL 1051120, at *9 (quoting *Boyd*, 299 F.R.D. at 467). While this is a slightly lower lodestar multiplier, "considering the history of this litigation and the public policy concerns with large percentage awards in common fund cases, the lower award is more reasonable." *Boyd*, 299 F.R.D. at 468 (reducing a fee award to a lodestar of 0.63).

### 2. Reimbursement for Litigation Expenses

"It is well-established that plaintiffs who are entitled to recover attorneys' fees are also entitled to recover reasonable litigation-related expenses as part of their overall award." *Boyd*, 299 F.R.D. at 468 (quoting *Kabore v. Anchor Staffing, Inc.*, No. 10-cv-3204-BEL, 2012 WL 5077636, at *10 (D.Md. Oct. 17, 2012)). "The Fourth Circuit has stated that such costs may include 'those reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services.'" *Id.* (quoting *Spell v. McDaniel*, 852 F.2d 762, 771 (4th Cir. 1988) (internal quotations omitted)). "Examples of costs that have been charged include necessary

26

> travel, depositions and transcripts, computer
> research, postage, court costs, and
> photocopying." *Id.* (citing *Almendarez v.
> J.T.T. Enters. Corp.*, No. 06-cv-68-JKS, 2010
> WL 3385362, at *7 (D.Md. Aug. 25, 2010)).

*CASA de Md., Inc.*, 2024 WL 1051120, at *9. Plaintiff identifies

a total of $13,896.25 in litigation fees, (ECF No. 45, at 1), made

up of $13,731.25 in the Plaintiff's portion of the mediation fees

and $165.00 for a filing fee in state court prior to removal. (ECF

No. 45-7, at 14). Courts in this district have approved similar

litigation costs. *See, e.g., Brent v. Advanced Med. Mgmt., LLC*,

No. 23-cv-3254-JKB, 2024 WL 5118528, at *10 (D.Md. Dec. 16, 2024)

(approving reimbursement of $25,273.37 in litigation costs,

$19,172.50 of which constituted mediation costs). The court will

approve the litigation costs requested.

### 3. Reasonableness of the Service Awards

"Incentive payments are 'often awarded in Rule 23 class

actions.'" *CASA de Md., Inc.*, 2024 WL 1051120, at *9 (quoting

*Graham*, 2022 WL 17584274, at *12). "In determining whether an

incentive payment is warranted, courts consider the actions the

plaintiff has taken to protect the interests of the class, the

degree to which the class has benefited from those actions, and

the amount of time and effort the plaintiff expended in pursuing

the litigation." *Id.* (citation modified) (quoting *Graham*, 2022 WL

17584274, at *12).

Representative Plaintiff has moved for an incentive award of $15,000. (ECF No. 43, at 1). The incentive award is separate from the Common Fund available for all Class Members' recovery, (ECF No. 43-1, at 2), and the Representative Plaintiff "actively cooperated with Class Counsel and expended substantial effort to see this case through to settlement." (*Id.*) In addition to contacting Class Counsel about her experience to begin this litigation, Representative Plaintiff "consulted with Class Counsel about her experiences, provided detailed information and documents to Class Counsel about the issues presented in this case, provided written testimony and took the time to understand and approve litigation and settlement strategy." (*Id.*). Given the Representative Plaintiff's efforts on behalf of the class, the court will grant the motion for the incentive payment of $15,000.

### 4. *Cy Pres* Recipients

Plaintiff requests that pursuant to the Settlement Agreement, the court approve four organizations as the non-profit residual recipients. (ECF No. 44, at 1).

> "Courts commonly approve *cy pres* distributions
> for unclaimed funds, such as the residue of a
> class settlement fund." *Curry v. Money One
> Fed. Credit Union*, No. 19-CV-3467-DKC, 2021 WL
> 5839432, at *3 (D.Md. Dec. 9, 2021) (citing
> *McDaniels v. Westlake Servs., LLC*, No. 11-cv-
> 1837-ELH, 2014 WL 556288, at *11 (D.Md. Feb.
> 7, 2014)). "The distribution is designed to
> put the funds 'to their next best compensation
> use, e.g., for the aggregate, indirect,

28

> prospective benefit of the class.'"    *Id.*
> (quoting *Klier v. Elf Atochem*, 658 F.3d 468,
> 474 (5th Cir. 2011)).

*In re Retina Grp.*, 2025 WL 2030241, at *15.

The parties propose a *cy pres* award for any residual funds in the Common Fund, which would donate the first $5,000 to Economic Action Maryland; the next $5,000, if any, to the Maryland Legal Aid Bureau, Inc.; the next $5,000, if any, to the National Consumer Law Center; and any remaining funds to the University of Maryland Francis King Carey School of Law. (ECF No. 44, at 1). Plaintiff has described how each organization works on consumer law issues on behalf of individuals in Maryland (and nationally, in the case of the National Consumer Law Center) like those in the settlement class. (ECF No. 44-1, at 3-5).

One recipient requires some additional analysis. Class Counsel have identified close ties to the University of Maryland Francis King Carey School of Law ("UMD Law School"). UMD Law School is an appropriate *cy pres* recipient on its own, but the possible appearance of a conflict of interest gives the court pause. Class Counsel noted in their *cy pres* motion that both Mr. Gordon and Mr. Carney attended UMD Law School, and Mr. Gordon is a member of the UMD Law School's Board of Visitors. (ECF No. 44-1, at 4 n.1). At the final fairness hearing, Class Counsel noted that ten years' worth of *cy pres* awards were used to fund an

endowed professorship, the Michael Milleman Professor in Consumer Law, at UMD Law School.  On the webpage announcing the first Michael Millemann Professor in Consumer Law, the school notes "[t]he endowed professorship is possible thanks to the efforts of members of the Gordon, Wolf & Carney law firm, under the leadership of Maryland Carey Law Board of Visitors member, Richard Gordon '89." *New Faculty: Michael Milleman Professor in Consumer Law Jeff Sovern*, Univ. of Md. Francis King Carey Sch. of L. (Dec. 4, 2023), https://law.umaryland.edu/content/articles/name-736553-en.html [https://perma.cc/W5UL-FVHC].  That endowed professorship is not the only one with ties to the firm; according to their motion for attorneys' fees, UMD Law School "recently named an endowed Professorship after the law firm that [Class Counsel] founded – the 'Gordon, Wolf & Carney Professor of Law.'" (ECF No. 45-1, at 22 n.8).  Class Counsel noted at the final fairness hearing, and in the supplement to the motion for final approval of the settlement, that this second professorship was not endowed using *cy pres* funds. (ECF No. 49, at 3).  In their supplement to the motion for final approval of the settlement, Class Counsel emphasize "**no portion of any *cy pres* distributions in this settlement will be directed to anything bearing the name of Class Counsel or their firm.**"  (*Id.*).

Nonetheless, the court acknowledges the "legitimate concern that the lure of *cy pres* distributions can improperly motivate lawsuit parties and defense or plaintiffs' counsel to steer unclaimed awards to recipients that advance their own agendas." Wilber H. Boies & Latonia Haney Keith, *Class Action Settlement Residue and Cy Pres Awards: Emerging Problems and Practical Solutions*, 21 Va. J. Soc. Pol'y & L. 267, 287 (2014). While the court appreciates the assurance that any *cy pres* funds would not be directed to the professorship named after Class Counsel's firm, the fact remains that Class Counsel have a pattern of including an institution with which they have very close ties in the *cy pres* awards they negotiate, including to fund a different professorship.[3] Class Counsel are reminded for their future cases that *cy pres* awards are "for the aggregate, indirect, prospective benefit of the class." *In re Retina Grp.*, 2025 WL 2030241, at *15. Given the fact that UMD Law School is the fourth *cy pres*

---

[3] Class Counsel attach a letter from UMD Law School's Dean Renée Hutchins Laurent to their supplement to the motion for final approval. (ECF No. 49-5). The letter assures the court that "[t]he [Gordon Wolf & Carney] Professorship has not been, and will never be, the beneficiary of *cy pres* funds directed from any of Gordon Wolf & Carney's class action settlements." (*Id.* at 2). As mentioned above, the court's concern arises from the sum of their involvement with the law school and prior funding of a different professorship, not solely the professorship named after Class Counsel's firm. The fact that Class Counsel were able to secure a letter from the school's dean dated the day after the final fairness hearing speaks to their close relationship to the school.

recipient and Class Counsel represented that they will not have any role in deciding how UMD Law School uses any funds, the court will approve the award.

The four institutions identified by the Plaintiff – Economic Action Maryland, Maryland Legal Aid Bureau, National Consumer Law Center, and University of Maryland Francis King Carey School of Law – will be approved as the *cy pres* recipients.

## III. Conclusion

For the foregoing reasons, Plaintiff's motion for final approval of class action settlement, (ECF No. 42), motion for approval of incentive award to the representative plaintiff, (ECF No. 43), and motion to approve *cy pres* award, (ECF No. 44), will be granted. Plaintiff's motion for award of attorneys' fees and expenses to class counsel, (ECF No. 45), will be granted in part. A separate order will follow.

/s/
_____
DEBORAH K. CHASANOW
United States District Judge
